

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DJ:AK
F.#2009R00139

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

May 6, 2011

**<u>Via ECF and Hand Delivery</u>**

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. C.R.
      <u>Criminal Docket No. 09-155 (JBW)</u>

Dear Judge Weinstein:

    The government submits this letter in connection with the above-referenced defendant's sentencing, which is currently scheduled for May 10, 2011.  For the reasons set forth below, the government submits that the Court is required by statute to impose a sentence of at least 60 months' incarceration.

I. <u>Factual Background</u>

   A. <u>The Charged Offense</u>

    On January 29, 2009, the defendant was charged by complaint with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B).  On March 18, 2009, the defendant was charged by indictment with four counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

    On September 16, 2009, the defendant pleaded guilty before Magistrate Judge Viktor V. Pohorelsky, pursuant to a plea agreement, to Count One of the above-captioned five-count indictment.  Count One charges that on or about November 17, 2008, the defendant distributed a video file containing child pornography, entitled "! NEW ! (pthc) 2007 Tara 8yr - Tara kutje) (pedo) (ptsc).mpg," in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).  This distribution count carries a statutory mandatory minimum sentence of sixty months' incarceration.

The defendant was an adult at the time of the offense. (Presentence Investigation Report ("PSR") ¶ 1 and p. 2.)  The defendant is now 22 years old.  (PSR, p. 2.)

The PSR includes a detailed discussion of the history of this case, including, <u>inter alia</u>, the defendant's offense conduct (PSR ¶¶ 3-14), the results of a forensic analysis of the defendant's computers (<u>id</u>. ¶¶ 15-18), victim impact statements (<u>id</u>. ¶¶ 19-23), and the defendant's personal characteristics, including his family history (<u>id</u>. ¶¶ 44-65), mental and emotional health (<u>id</u>. ¶¶ 66-77), substance abuse history (<u>id</u>. ¶¶ 79-84), educational history (<u>id</u>. ¶¶ 85-90), and employment history (<u>id</u>. ¶¶ 91-98).

B.    The Defendant's Repeated Molestation and
       <u>Continued Harassment of His Half-Sister</u>

In addition to allocuting to the above-referenced child pornography distribution offense, the defendant admitted to sexually molesting his minor half-sister on three separate occasions, beginning when she was 8 years old and continuing until she was 11 years old.  (PSR ¶ 11.)

According to a Federal Bureau of Investigation Polygraph Report, the defendant initially falsely denied having any sexual contact with his half-sister, "Jane Doe."  (Exh. A[1], 3/17/09 Polygraph Report, at 1.)  However, during the course of a pre-polygraph examination interview, the defendant disclosed that he had engaged in repeated sexual contact with his minor half-sister:

> The first contact was in a hotel room on a family trip.  [Defendant] was sharing a bed with his half-sister [Jane Doe] who was approximately 8 years old.  At the time of the incident [Defendant] was 15 years old.  After becoming sexually aroused from contact with his sister in bed, [Defendant] took his sister's hand and had her manually stimulate his penis.
>
> The second incident occurred a year later when [Defendant] was 16 years old and his half-sister [Jane Doe] was 9 years old.  At the time of this incident [Defendant] and his

---

[1]    All exhibits referenced herein are filed separately under seal.

sister were home alone in his father's Manhattan apartment.  After playing around with [Jane Doe], [Defendant] became sexually aroused and had [Jane Doe] manually stimulate his penis with her hand.  [Defendant] rubbed [Jane Doe]'s vagina through her panties.

The third incident occurred when [Defendant] was 18 years old and his half-sister [Jane Doe] was 11 years old.  This incident occurred at [Defendant]'s father's home in Scarsdale, New York.  After playing around together, [Defendant] became sexually aroused.  [Jane Doe] noticed that [Defendant] had an erection and started to manually stimulate [Defendant]'s penis with her hand. [Defendant] rubbed [Jane Doe]'s breasts and manually stimulated her vagina - initially through her panties and then without her panties.

(Exh. A, at 1-2.)

The defendant was then administered a polygraph examination consisting of the following relevant questions:

Question: Since your 18th birthday, besides what we talked about, have you ever had any physical sexual contact with anyone under the age of 18?

Answer: No.

Question: Besides what we talked about, have you ever had any physical sexual contact with anyone under the age of 18?

Answer: No.

(Exh. A, at 2.)  After the polygraph examiner determined that the defendant had responded deceptively to these two questions, the defendant made the following additional admissions regarding his molestation of his half-sister:

on the last occasion in which he had physical sexual contact with his half-sister [Jane Doe] at his father's home in Scarsdale, New York he and his half-sister performed limited oral sex on each other.  [Defendant] coached his

3

half-sister [Jane Doe] on how to perform oral
sex.

(Id. at 3.)  The defendant then also admitted to having sexual
conduct with three additional minors on multiple occasions: a
male minor, age 15, a female minor, age 15, and a female minor,
age 16.  The defendant was 18 and 19 years old when these
incidents occurred.  (PSR ¶ 12; Exh. A at 4.)  Following the
polygraph examination, the defendant provided a written, signed
statement detailing his above-described sexual molestation of his
half-sister and the other minors.  (Exh. A at 3-4.)

        The defendant's last reported incident of molestation
of his half-sister, when the defendant penetrated his 11-year-old
half-sister's mouth with his penis and coached her on how to
perform oral sex on him, occurred while the defendant was home
during a break from attending college.  (Exh. A at 3-4; PSR ¶
14.)  The defendant's repeated molestation of his half-sister,
and subsequent disclosure of this molestation, has precipitated
severe psychological and emotional trauma for his half-sister,
who is now undergoing mental health treatment.  (PSR ¶¶ 19-22.).

        The defendant has continued to send sexually suggestive
images to his half-sister following his arrest in the instant
case, while his half-sister was undergoing the above-mentioned
mental health treatment.  (10/7/10 Transcript of Evidentiary
Hearing ("Tr.") at 43.)

        C.    The Defendant's Multiple Violations
              of Bond Release Conditions

        This Court has held multiple bond revocation hearings
in connection with the defendant's repeated violations of his
bond release conditions.  (Docket 09-CR-155, 2/5/09 Order Setting
Release Conditions; Exhs. B-2, B-3, B-4, B-5 and B-7, Pretrial
Violation Memoranda dated 5/12/09, 6/17/09, 7/24/09, 12/17/09,
8/19/10; and Exhs. B-1, B-6 and B-8, Pretrial Modification
Memoranda dated 2/25/09, 3/15/10 and 8/25/10.)

        Specifically, the defendant has committed at least
thirteen violations of the conditions of his release.  First, on
February 27, 2009, the defendant permitted two minors to engage
in underage drinking in his home, in violation of his prohibition
against interacting with minors.  One of the minors, who was also
under the influence of Vicodin, was subsequently hospitalized.
In connection with this violation, on March 10, 2009, the
defendant appeared for a bond revocation before the Honorable
Lois Bloom, and the conditions of his release were modified to
include electronic monitoring.  The defendant was strongly

admonished by Judge Bloom to avoid contact with minors.  (Docket 09-CR-155, Entry 9, Bail Revocation Hearing; Exh. B-2, 5/12/09 Pretrial Memo. at 1-2.)

Following the March 10, 2009 bail revocation hearing, the defendant's violations continued as follows:

(2)-(4)  On February 28, 2009, the defendant committed three violations. Specifically, he traveled to New Jersey with his father and his minor half-sister, whom the defendant has admitted to molesting on multiple occasions.  This constituted three separate violations: failure to report his travel to Pretrial Services; direct interaction with a minor; and prohibition against directly contacting any person who is or may become a victim or witness in this case.

(5) On April 28, 2009, the defendant tested positive for marijuana.

(6) On July 15, 2009, the defendant left his home without authorization, in violation of his electronic monitoring requirement.

(7) On July 16, 2009, the defendant left his home without authorization, in violation of his electronic monitoring requirement.

(8)-(10) On July 21, 2009, the defendant committed three violations: he used the peer-to-peer social networking website Facebook.com, in violation of his prohibition against recreational internet usage; he used the internet to communicate with his minor half-sister, in violation of his prohibition against communicating with a minor through electronic means; and he communicated with his minor half-sister, whom he molested on multiple occasions, in violation of his prohibition against directly contacting any person who is or may become a victim or witness in this case.

5

(11) On December 2, 2009, the defendant
tested positive again for marijuana.

(12) On August 13, 2010, the defendant
left his home again without permission.

(13) On August 15, 2009, the defendant
left his home again without permission to
attend a party where minors were present.

(Exhs. B-2, B-3, B-4, B-5 and B-7.)

After being admonished by the Court in connection with
violations (8) through (10), above, regarding his use of the
internet in violation of his bond release conditions, the
defendant continued to surreptitiously use Facebook through at
least August 23, 2010.  The results of an administrative subpoena
to Facebook for activity on the defendant's account between May
23, 2010 and August 23, 2010 indicate that the defendant accessed
his Facebook account 1,614 times during this time period.
Additionally, 566 of these Facebook log-ins occurred from
Columbia Green Community College in Hudson, New York, between
July 20, 2010 and August 19, 2010.  (10/7/10 Tr. at 38-42.)
During a bail revocation hearing before this Court on August 24,
2010, the defendant stated that he was attending summer school
courses at Columbia Green Community College in Hudson, New York
between June and August 2010.  (8/24/10 Bail Hearing Tr. at 5-6.)

D.   The Defendant's Seven Psychological
     and Neuropsychological Evaluations

Since his arrest in this case, the defendant has been
psychologically and neuropsychologically evaluated seven times.

Prior to the Court-ordered evidentiary hearings in this
case, the defendant was examined by four psychologists: (1) Dr.
N.G. Berrill at the New York Center for Neuropsychology &
Forensic Behavioral Science, at the direction of Pre-Trial
Services; (2) Dr. Gabrielle Stutman, a private evaluator, at the
request of defense counsel; (3) Dr. Christine Scronce at Devens
Federal Medical Center, following the defendant's self-surrender
after violating his conditions of release on bond; and (4) Dr.
Richard M. Hamill, at the direction of the Probation Department.
Following the Court's June 3, 2010 Order discussed below, the
defendant was further examined by two psychologists: (5) Dr.
Robert Prentky, a defense expert; and (6) Dr. Susan Sachsenmaier,
a government expert.  Finally, the defendant was examined by (7)
Dr. William Barr, a neuropsychologist and government expert.  The

6

results of these examinations are discussed in the Court's March 10, 2011 Order.  (3/10/11 Order at 143-62.)

The six separate psychological examinations yielded moderately differing diagnoses with regard to, <u>inter alia</u>, the defendant's impulse control, maturity, social adjustment, mood and degree of sexual deviance.  (3/10/11 Order at 143-62.)

The sole neuropsychological examination, conducted by Dr. Barr, concluded that the defendant "functions from a cognitive and intellectual perspective just like any other 21-year-old male."  (3/10/11 Order at 154)(quoting Barr Report). Dr. Barr found that:

> While [the defendant] might appear immature from a physical and, in some instances, behavioral perspective, there is no evidence that he lags behind others in his age group in any specific cognitive domain.... The actions, for which [the defendant] is charged reportedly began while he was an adolescent and continued into early adulthood.  There are a number of research findings indicating that weaknesses in response inhibition, planning, and decision-making that can potentially affect behavior through mid-adolescence.  The results from a comprehensive battery of tests administered to [the defendant] indicate that, as a 21-year-old, he exhibits no objective evidence of impairment in any of these particular skills.  While we have no direct evidence of his behavior as an adolescent, there is no evidence from school records or any other source to indicate that his functioning at that time differed significantly from his peers.  In summary, the results of this examination are not indicative of any diagnosis of cognitive impairment or learning disability.

(<u>Id</u>. at 155-56.)

E.   <u>The Court-Ordered Evidentiary Hearings</u>

On June 3, 2010 this Court ordered a hearing to address the following issues:

> 1.   The harm to children from involvement in child pornography and from the defendant's

7

actions in particular, to wit: distribution
of child pornography;

2.   The risk that the defendant will act out
to harm others if he is or is not
incarcerated;

3.   The risk that the defendant will be
raped or otherwise abused in prison if he is
incarcerated;

4.   The nature of treatment available in
federal prison and defendant's suitability
for such treatment; and

5.   The neurological and psychiatric
condition of the defendant, including his
developmental maturity, at the time of the
offense and presently.

(6/3/10 Mem. and Order.)

        The Court held evidentiary hearings to address these
issues on October 7, 8 and 12, 2010, and January 25 through 28,
2011.  The evidence adduced at these hearings is discussed in the
Court's March 10, 2011 Order.[2]

---

        [2]   In the Court's 3/10/11 Order, the Court incorrectly
states that the defendant's child pornography collection does not
contain images of "violence."  (Id. at 406.)

        First, all child pornography is inherently violent, in
that it depicts the rape of non-consenting children.  Indeed,
every image of child pornography represents a victim who has been
abused, exploited and raped.  Victim impact statements from
several of the victims depicted in the images and videos
contained in the defendant's vast child pornography collection
were submitted to the Court.  Through their statements, the
victims explained the pain they experienced, not only from the
actual sexual molestation, but also the repeated reliving of the
horror through knowing their sexual abuse was being used a tool
for gratification and amusement on the internet by people like
the defendant.  (3/10/11 Order at 66-68 (describing continual
harms suffered by child rape victims, when images and videos of
their rape are traded online for sexual gratification of
viewers); 114-137 (Victim Impact Statements from rape victim, and
parents of rape victim, in "Vicky" series, found on defendant's
computers); 10/7/10 Tr. at 29-37 (Victim Impact Statements from

8

The Court also ordered the parties to visit the Federal Medical Center at Devens, the only Bureau of Prisons facility that currently offers residential sex offender treatment.  This trip is discussed in the Court's March 10, 2011.  (3/10/11 Order, at 328 and App. B.)

## II.  The Defendant's Statutory and Guideline Range of Imprisonment

There is no dispute that the statutory range of incarceration for the offense of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), is 5 to 20 years. (PSR ¶ 103.)

The PSR calculates the defendant's Guidelines base offense level as 22.  After adding enhancements for possession of images of prepubescent minors (2 points), distribution of child

victims in "Dalmation" and "Tara" series, also found on defendant's computers.)  These Victim Impact Statements underscore the tremendous harm caused by the defendant's trafficking in images and videos of the victims' traumatic sexual assaults.

Second, the defendant's computers contained images of gross violence.  For example, the defendant had downloaded a video file named: "(Pt)'_'101-103-f03-Cj-Gay Pthc Dad Pops His 8Yo Boys Butt Cherry-preteen pedo gay kiddy incest.avi."  That video depicts a prepubescent boy, approximately 8 years old, straddling the torso of a naked adult male and then being anally penetrated by the penis of that adult male.  The defendant's computer also contained two videos from the "Tara" series titled "Tara's Oral Explosion" and "'!New!' (pthc) 2007 Tara 8yr - Tara Jutje (pedo) (ptsc).mpg."  The first video depicts the prepubescent known female victim, at approximately 8 years old, being orally penetrated by the penis of an adult male and then being orally copulated by the adult male.  The second video is of the same female victim being orally penetrated by the penis of an adult male.  It is wrong for the Court to classify these videos as not violent.

The Court also wrongly concludes that the majority of the images the defendant viewed involved "young boys between the ages of 10 and 12, not far from his own age group."  (3/10/11 Order at 406.)  The defendant, who was 19 years and seven months old at the time of the charged offense, and had already attended one year of college, cannot be classified in a similar age group, for sexual purposes, as a 10-year-old child.

9

pornography through GigaTribe in a manner not otherwise described
(2 points), engaging in a pattern of sexual abuse of his half-
sister (5 points), using a computer to possess child pornography
(2 points) and possessing the equivalent of 8,458 images of child
pornography (5 points), the PSR calculates the defendant's
adjusted offense level as 38. (PSR ¶ 28-37.) After subtracting
three points for timely acceptance of responsibility, the PSR
calculates the defendant's total offense level as 35. (Id. ¶ 38-
39.) Based on a total offense level of 35 and a criminal history
category of I, the PSR calculates the defendant's Guideline range
of imprisonment as 168 to 210 months. (Id. ¶ 104.)

The Court has adopted the PSR's Guideline calculations.
(3/10/11 Order at 403.) However, for the reasons set forth in
the Court's March 10, 2011 Order, the Court intends to sentence
the defendant to a term of imprisonment of 30 months, which is
below not only the Guideline range but also the statutory
mandatory minimum term of incarceration of sixty months, on the
basis that a sixty month sentence in this case would constitute
Cruel & Unusual Punishment in violation of the Eighth Amendment
to the Constitution. (Id. at 394-402; 418.)

For the reasons set forth below, the government
respectfully submits that a sentence of at least sixty months'
incarceration is warranted and mandated in this case.

## III. A Sixty Month Sentence Is Not Cruel and Unusual Punishment

The Eighth Amendment of the United States Constitution
bars the infliction of "cruel and unusual punishments." U.S.
Const. amend. VIII. In Roper v. Simmons, the Supreme Court
stated this amendment "guarantees individuals the right not to be
subjected to excessive sanctions." 543 U.S. 551, 560 (2005).
"The right flows from the basic precept of justice that
punishment for crime should be graduated and proportioned to the
offense." Id.(internal quotations omitted). Courts are
extremely circumspect when applying Eighth Amendment review to
prison terms, even though it has been applied to lengthy
sentences of incarceration. In Ewing v. California, the Supreme
Court noted that noncapital sentences are subject only to a
"narrow proportionality principle" which prohibits sentences that
are "grossly disproportionate" to the crime. 538 U.S. 11, 20, 23
(2003)(quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991)
(Kennedy, J., concurring in part and concurring in judgment).

In Ewing, the Court rejected an Eighth Amendment
challenge to a prison term of twenty-five years to life under
California's "three strikes law" for a recidivist who was
convicted of stealing golf clubs worth $1,200. Justice O'Connor,

in a plurality opinion, recognized that the law had been criticized for its lack of effectiveness and lack of wisdom, but nonetheless noted that the State of California had a "reasonable basis" for believing the law would substantially advance the deterrence of crime.  Id. at 24-28.  Justice O'Connor then held that even though the sentence was long, "it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious crimes" must be incapacitated.  Id. at 30.

Both Harmelin and Ewing reaffirm that only in "exceedingly rare" cases will a sentence for a term of years violate the Eighth Amendment's prohibition against cruel and unusual punishment.  Ewing, 538 U.S. at 22.  In order to make this determination, a court must first examine whether the legislature "has a reasonable basis for believing that [a sentence advances] the goals of [its] criminal justice system in any substantial way."  Id. at 28 (quoting Solem v. Helm, 463 U.S. 277, 297 n. 22 (1983)).  The court then considers if the sentence of the particular defendant is grossly disproportionate to the crime he committed.  Id.  The court need not look beyond this threshold question if the statute arguably furthers the State's penological goals and reflects "a rational legislative judgment, entitled to deference."  Id. at 30.

A.   Congress Has a Rational Basis for Requiring
     Imposition of a Sixty-Month Minimum Sentence

Here, the decision of the United States Congress is entitled to deference because there is a reasonable basis for imposing a sixty-month mandatory minimum sentence for the offense of distribution of child pornography, a basis that is "'particularly compelling in the child pornography context.'"  United States v. Irey, 612 F.3d 1160, 1211 (11th Cir. 2010)(quoting United States v. Pugh, 515 F.3d 1179, 1194(11th Cir. 2008)).  As the Irey Court held:

> We explained that imposing a lighter sentence
> on one convicted of a child pornography
> offense 'tends to undermine the purpose of
> general deterrence, and in turn, tends to
> increase (in some palpable if unmeasurable
> way) the child pornography market.'  The
> problem of a missed opportunity for
> deterrence, we observed, is compounded when
> the crime involves not just possession but
> also distribution of child pornography.

Id. (quoting Pugh, 515 F.3d at 1194)(emphasis added).

11

There can be no serious dispute that "the elimination of child pornography and protection of children from the deleterious effects of this form of sexual exploitation provides a compelling governmental interest in effective criminal penalties." Congressional Findings: Pub. L. 104-208 Div. A. Title I, Sec. 101(a) (1996). Criminalizing the distribution of child pornography is tied directly to state and national efforts to deter its production. As most distribution of this material occurs "underground," the legislature must be permitted to "stamp out this vice at all levels in the distribution chain." Osborne v. Ohio, 495 U.S. 103, 109 (1990). Punishing the defendant for his distribution of 8,458 images of child pornography (PSR ¶ 33) is not only a rational, but eminently reasonable, method of combating this serious problem.

On this point, the Third Circuit has expressly held that "[i]n evaluating the magnitude of the harm caused by child pornography, we defer to the findings made by Congress. The congressional findings underlying § 2251 repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.' Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996)(codified as amended at 18 U.S.C. § 2251)." United States v. MacEwan, 445 F.3d 237, 249 (3d Cir. 2006).

In 2003, when Congress revisited and revised § 2251, it made many findings regarding child obscenity and pornography prevention. Among them, Congress found that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." Congressional Findings: Pub. L. 108-21, Title V, Subtitle A, § 501, 117 Stat. 676, Subsection 2. Moreover, Congress specifically found that:

> The Government ... has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.

Id., Subsection 3 (citation omitted). This rationale clearly applies in the case of this defendant, who is responsible for

distribution the equivalent of well over 8,000 images of child pornography around the nation.

In United States v. Goldberg, 491 F.3d 668 (7th Cir. 2007), the Seventh Circuit recognized the deference due to Congress in assessing the harms caused by the distribution of child pornography, and the commensurate criminal penalties. There, the district court imposed a sentence of one day of incarceration on a defendant who was similar in age to this defendant: 23 years old at time the Seventh Circuit's opinion was issued.[3]  See id. at 669.  In holding that the district court's sentence was unreasonably low, the Seventh Circuit held that:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims.  Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

Id. at 672 (Posner, J.); see also United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."); United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010) (district court did not adequately consider how its "admittedly 'lenient' sentence would deter others generally from purchasing and viewing child pornography.  Camiscione's sentence ... undermines the purpose of general deterrence."); United States v. Goff, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child

_____

[3]     Unlike this defendant, there was no evidence in the appellate record that the defendant in Goldberg was a repeated hands-on sex offender.

pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing....").

In sum, Congress has already made the relevant policy determinations about the seriousness of this defendant's offense, and it is not for the courts to usurp that role, even post-Booker.

B.   The Defendant's Mandatory Minimum Sentence Is Not Grossly Disproportionate to the Crime He Committed

The Supreme Court has admonished reviewing courts that "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Ewing, 538 U.S. at 21 (citation omitted). Only once in the past 25 years has the Supreme Court sustained an Eighth Amendment challenge to the length of a prison sentence. In that case, Solem v. Helm, a judge sentenced a non-violent repeat offender to life imprisonment without parole for the crime of writing a "no account" check for one hundred dollars. 463 U.S. at 279-82. The Court noted that this crime was very minor and the life sentence was "the most severe punishment that the State could have imposed." Id. at 297. The Court further noted that the crime was "one of the most passive felonies a person could commit." Id. In this case, by contrast, the defendant here actively distributed images of child pornography, and ultimately amassed a collection of the equivalent of 8,458 images of child pornography, thus feeding demand which generates the creation of such material in the first instance.

Additionally, Solem did not involve a mandatory minimum sentence, like the sentence the defendant here is facing, but rather concerned a judge's discretionary decision to impose the maximum authorized sentence. Therefore, Solem did not implicate the "traditional deference" that courts must afford to legislative policy choices when reviewing statutory mandated sentences. See Ewing, 538 U.S. at 25 (O'Connor, J., announcing judgment of the Court); Harmelin, 501 U.S. at 1006-07 (Kennedy, J., concurring in part and concurring in the judgement); Solem, 463 U.S. at 299, n. 26 (noting that the Court's decision "did not question the legislature's judgement.").

The defendant's claim is also far weaker than those presented in other cases where the Supreme Court has rejected Eighth Amendment challenges to prison sentences on proportionality grounds. See, e.g., Rummel v. Estelle, 445 U.S. 263, 265-66, 285 (1980) (upholding life in prison without the possibility of parole under three strikes law where final offense

14

was obtaining $120.75 by false pretenses and the loss amount of the two prior fraud felonies was $80 and $28.36, respectively).

Perhaps the most striking example is Hutto v. Davis, 454 U.S. 370, 374 (1982)). In Hutto, the defendant was found to be a drug dealer in possession of 9 ounces of marijuana and assorted drug paraphernalia. He was sentenced to two twenty year terms of imprisonment, which the Supreme Court found constitutional. Based on the sentence in Hutto, the only argument left to the defendant is that his offense is considerably less significant than the marijuana possession offense in Hutto. Such an argument would require open disagreement with Congress's assessment of the seriousness of receiving and distributing thousands of images of children being sexually exploited. Even if this Court were to undertake an analysis of the relative seriousness of the defendant's crime, it is hard to imagine how the defendant's crime of distributing and possessing a massive collection of child pornography is less serious than Hutto's possession of 9 ounces of marijuana. See Gonzales v. Raich, 545 U.S. 1, 5 n.1 (2005) (collecting statutes from nine states that have decriminalized marijuana for medical purposes).

Additionally, every Circuit court that has considered this question, even after United States v. Booker, 543 U.S. 220 (2005), has refused to expand the proportionality principle, and has determined that a sentence within the statutory maximum-minimum range in the child pornography context does not violate the Eighth Amendment. See, e.g., United States v. Gross, 437 F.3d 691 (7th Cir. 2006)(fifteen-year mandatory minimum sentence for distribution of child pornography not grossly disproportional); United States v. MacEwan, 445 F.3d 237 (3d Cir. 2006)(fifteen year mandatory minimum sentence for child pornography offender did not violate the Eighth Amendment); United States v. Weis, 487 F.3d 1148, 1154 (8th Cir. 2007)(a sentence of less than the twenty year maximum under 18 U.S.C. § 2252(a)(2) did not violate the Eighth Amendment). Defendant's argument stretches the narrow Harmelin exception beyond recognition.

The government's research also uncovered additional Eighth Amendment challenges to sentences imposed for various child pornography offenses. All of these challenges were denied. See, e.g., United States v. Martin, 2006 WL 1359945 (2d Cir. 2006)(unpublished)(holding that imposition of five-year mandatory minimum sentence for transmitting child pornography in interstate commerce is not unconstitutionally disproportionate to the crime committed, even in light of defendant's physical disability as a paraplegic) (citing United States v. Yousef, 327 F.3d 56, 163 (2d

Cir. 2003) ("The Eighth Amendment forbids only extreme sentences
that are grossly disproportionate to the crime, and, with the
exception of capital punishment cases, successful Eighth
Amendment challenges to the proportionality of a sentence have
been exceedingly rare.")(citations and internal quotation marks
omitted)); United States v. Soule, 2007 WL 2962373 (10th Cir.
2007)(unpublished) (sentence above the mandatory statutory
minimum of 120 months for second conviction for possession of
child pornography did not violate the Eighth Amendment); United
States v. Meiners, 485 F.3d 1211 (9th Cir. 2007)(per curiam)
(15-year mandatory minimum sentence for advertising child
pornography under § 2251(d) did not amount to cruel and unusual
punishment in violation of the Eighth Amendment); United States
v. Green, 2007 WL 4403148 (11th Cir. 2007)(unpublished) (97-month
sentence for violations of §2252(a)(2) and (a)(4) does not
violate the Eighth Amendment); United States v. Bledsoe, 2006 WL
1083353 (4th Cir. 2006)(unpublished)(mandatory minimum of 15
years pursuant to § 2251(d) for advertising willingness to trade
child pornography does not violate the Eighth Amendment;
proportionality review not available for any sentence less than
life imprisonment without the possibility of parole); United
States v. Wilder, 2006 WL 572699 (D. Mass. 2006)
(unpublished)(mandatory minimums for recidivist defendants
established by §2252(b)(1) and (2) "are not grossly
disproportionate to the serious offenses that they are meant to
punish.").

        The defendant attempts to distinguish his case on the
ground that he is purportedly naive and immature.  Yet the
defendant's case is, in reality, no different than those of the
countless other troubled young adult defendants who have been
prosecuted for serious crimes in this District.  Notably, the
defendant's psychological and neuropsychological profile does not
exhibit any type of gross deficiency, such as mental retardation
or organic brain damage, that renders him incapable of
understanding the nature of his actions.  This finding was
underscored by neuropsychologist Dr. Barr, who concluded that the
defendant enjoys "high-average" intelligence and the cognitive
and intellectual functioning of any other 21-year-old male.
(3/10/11 Order at 153-57)(citing Dr. Barr Report at 8-9).

        Indeed, the defendant's psychological examinations
revealed him to be a fairly intelligent adult, clearly capable of
understanding the nature of his actions, and the difference
between right and wrong and between lawful and unlawful conduct.
While the defendant has exhibited difficulty controlling his
impulses, and exhibits troubling psychological symptoms with
respect to his views of his peers and society, those traits do
not render the defendant "grossly immature"; rather they place

16

the defendant squarely in the same category of the vast majority
of individuals who commit federal crimes.  The defendant's
psychological profile, while atypical from that of a well-
adjusted adult male, rises nowhere near the exceptional level
required in order for the Court to consider disregarding a sixty-
month mandatory minimum sentence, that reflects the careful and
recent judgment of Congress, on proportionality grounds.

On this point, Gross is particularly instructive.  In
Gross, the defendant challenged, on proportionality grounds, the
fifteen-year mandatory minimum sentence imposed on him for
distribution of child pornography after having been previously
convicted of a sex offense, based on the fact that he had been
"subjected to unspeakable abuse throughout his childhood" — when
he was twelve years old, Gross was raped several times a week by
his uncles.  Gross, 437 F.3d at 691.  Despite this history of
horrific abuse, the Seventh Circuit upheld Gross' sentence under
§2252A(b)(1) and found it did not violate the Eighth Amendment.
The Court held that "[t]he defendant may or may not be less
culpable, morally speaking, because of what he has been through
... [b]ut a defendant's culpability is not the only basis for
imposing a prison sentence.  Deterrence and incapacitation are
also reasons to punish." Id. at 694.  Similarly, a sixty-month
sentence for this defendant for distribution of child pornography
is simply not unconstitutional on proportionality grounds.

> C.   Graham v. Florida Is Inapplicable to Defendant's Case

Defendant's reliance on Graham v. Florida, 130 S.Ct.
2011 (2010), for the proposition that "evolving standards of
decency" regarding treatment of juveniles provides grounds for
invalidating punishments under the Eighth Amendment is inapt.  In
Graham, the petitioner was sentenced to life imprisonment for an
armed burglary he committed when he was sixteen years old, and
contended that this sentence was excessive under the Eighth
Amendment because he was a minor at the time of the crime and was
one of approximately 109 minors in the United States serving life
without parole for a nonhomicide crime.  The Supreme Court
agreed, for the first time extending a categorical ban on a type
of punishment in a non-death penalty case.  Id. at 2022.

The High Court first surveyed state sentencing statutes
and practices throughout the United States and concluded that
there is a national consensus against sentencing juveniles who
commit nonhomicide crimes to life without parole.  Graham, 130
S.Ct. at 2025-26.  Next, the Court considered "the culpability of
the offenders at issue [minors] in light of their crimes
[nonhomicides] and characteristics, along with the severity of
punishment," id., and concluded that minors who "did not kill or

17

intend to kill ha[ve] a twice diminished moral culpability."  <u>Id</u>. at 2027.  The Court noted that life without parole is the "second most severe punishment permitted by law," and found that it is an especially severe punishment for a juvenile.  <u>Id</u>. at 2028 ("A 16-year old and a 75-year old each sentenced to life without parole receive the same punishment in name only.").  Finally, after determining that the legitimate penological justifications of retribution, deterrence, incapacitation and rehabilitation do not support the sentencing practice at issue, the Graham Court held:

> The [Eighth Amendment to the] Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

<u>Id</u>. at 2034.

This case is distinguishable from <u>Graham</u> on every ground.  First, there is a strong consensus, as discussed above, that sentencing distributors of child pornography to at least the mandatory minimum of sixty months' incarceration does <u>not</u> violate the Eighth Amendment.

Second, the defendant is clearly not a juvenile.  He is now a 22-year-old man, who was 19 years and seven months old at the time he committed the offense, more than one year and seven months past the legal age - 18 years old - at which point he could be charged as an adult.  The defendant's purportedly youthful appearance aside, this is not a close case.

Third, the defendant's moral culpability is quite high, in that he methodically amassed a massive collection of child pornography over a period of years, and also acted out on his fantasies by committing multiple hands-on offenses.  Taking his predatory actions a step further, the defendant continued to harass and victimize his juvenile half-sister even after his arrest in this case, by sending her sexually suggestive images while she was receiving mental health treatment following her sexual abuse at his hands.

Fourth, the sixty-month minimum sentence the defendant faces is a far cry from the life sentence at issue in <u>Graham</u>.

Fifth, as discussed herein, each of the legitimate penological justifications – retribution, deterrence, incapacitation and rehabilitation – strongly support at least a sixty-month minimum sentence in this case.

Sixth, the Supreme Court's reasoning in Graham expressly limited the reach of its holding.  For example, the Court's conclusion that there is a national consensus against sentencing juveniles who commit nonhomicides to life imprisonment was based in part on counting the total number of people in the United States serving life terms for nonhomicide crimes committed as a minor.  That tallying included only those prisoners who had no possibility of ever being paroled, as was the case for petition in Graham, and added up to 109 prisoners nationwide, which led to a conclusion that Graham's sentence was "exceedingly rare."  Id. at 2026.  This factor clearly distinguishes Graham from the instant case; indeed, thousands of defendants nationwide have been sentenced to substantial terms of incarceration, far exceeding sixty months' imprisonment, for child pornography-related offenses.

Given the limited holding in Graham, it should come as no surprise that no other Court has held Graham to apply to non-life sentences for juveniles.  See, e.g., United States v. Scott, 610 F.3d 1009, 1018 (8th Cir. 2010)(holding that Graham was inapplicable to 25-year-old defendant, and further noting that Graham holding was "limited to defendants sentenced to life in prison without parole for crimes committed as juveniles").

Furthermore, as the Supreme Court held in Ewing, the Eighth Amendment only requires that non-capital sentences not be "grossly disproportionate" to the crime committed.  Ewing, 538 U.S. at 23.  The Ewing Court stated that Justice Kennedy's concurrence in Harmelin "guide[s] our application of the Eighth Amendment."  Id. at 23-24.  In Harmelin, Justice Kennedy found that the Court's precedents did not require comparisons of sentences within and between jurisdictions when considering an Eighth Amendment challenge, unless a threshold comparison of the crime committed and the sentence imposed gave rise to an inference of gross disproportionality.  See Harmelin, 501 U.S. 957, at 1005 ("intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.").  Similarly, in United States v. McEwan, 445 F.3d 237, 250 (3d Cir. 2006), the Third Circuit found that when there was no inference of gross proportionality it did not need to reach "an examination of the crimes committed and sentences received by other defendants in the federal and state jurisdictions."  Here,

because a comparison of the defendant's crime and sixty-month
mandatory minimum sentence does not give rise to an inference of
gross disproportionality, as discussed in Section III.B., above,
his discussion of life sentences imposed on juveniles for non-
homicide offenses is irrelevant.

Additionally, the Court should not impose a lesser
sentence simply because the defendant began viewing child
pornography when he was a juvenile.  Countless defendants in this
District, and before this Court, have been prosecuted for a range
of serious federal offenses, including narcotics distribution,
immigration-related offenses, fraud, weapons possession offenses,
criminal enterprise-related offenses, sex offenses, and various
related conspiracies, wherein their relevant criminal conduct
commenced prior to their eighteenth birthday.  This defendant,
like those many other defendants, should not be treated as a
juvenile simply because he started engaging in criminal activity
prior to his eighteenth birthday.  And to be clear, while this
defendant admitted to possessing and distributing child
pornography prior to his eighteenth birthday, he has <u>not</u> been
charged with any offenses <u>committed</u> prior to his eighteenth
birthday.  Further, the offense to which the defendant pleaded
guilty, one count of distribution of child pornography on
November 17, 2008, is not even a continuing or bridge offense
that commenced prior to the defendant's eighteenth birthday on
April 16, 2007.  Rather, the defendant committed this stand-alone
distribution offense over one year and seven months after his
eighteenth birthday.

In any event, the statutory minimum sentence at issue
in this case was enacted by Congress to apply to adult offenders
like this defendant.  As such, any argument that it must be
stricken as applied against this defendant, in light of evolving
standards of decency regarding the sentencing of juveniles, is
wholly untenable.  This statute was enacted by representatives of
government who together represent a national consensus on this
issue.

    D.   The Defendant's Guideline Range of Imprisonment
       <u>Far Exceeds His Statutory Mandatory Minimum   </u>

Finally, it is critical to note that the defendant's
Guideline total offense level – which includes enhancements for
engaging in a pattern of sexual misconduct with a minor,
possession of images involving prepubescent minors, and
possession of 8,458 images of child pornography – is level 35,
which corresponds to a range of imprisonment of 168 to 210 months
assuming the defendant is sentenced under criminal history
category I.  (PSR ¶ 28-39, 104.)  Thus, where the reasoned

judgment of the United States Sentencing Commission, an independent agency in the judicial branch, has concluded that the appropriate advisory sentence may range up to 210 months - which is a full 150 months longer than the sixty month mandatory minimum in this case – it is untenable to claim that a sentence of sixty months violates the Eighth Amendment.  While a non-Guideline sentence may be warranted in this case based on the factors set forth in 18 U.S.C. § 3553(a), a sentence of at least sixty months is both warranted in light of the § 3553(a) factors, and required by statute.

                    *     *     *     *     *

          In sum, the statutory mandatory minimum sentence of sixty months' incarceration for the defendant's distribution of videos of children being sexually exploited in order to provide personal sexual gratification for adults, like this defendant, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.  The punishment reflects a recent, and rational, legislative judgment, entitled to deference, regarding the appropriate sentence for offenders who have committed the crime of distribution of child pornography.  Furthermore, a sixty month sentence is not grossly disproportionate to the serious crime this adult defendant committed.

IV.  Conclusion

          For the foregoing reasons, the government submits that the Court is required to sentence the defendant to a term of imprisonment of at least 60 months.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:  __/s/_____
                              Ali Kazemi
                              Assistant U.S. Attorney
                              (718) 254-6171

cc:  Chantel Febus, Esq. (Via ECF and Email)
     Sanford Talkin, Esq. (Via ECF and Email)
     Louis Freeman, Esq. (Via ECF and Email)
     Deirdre von Dornum, Esq. (Via ECF and Email)