UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>C.R.,<br>                    Defendant. | MEMORANDUM AND ORDER<br><br>No. 09-CR-155 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I.  Introduction

   This case exemplifies the sometimes unnecessary cruelty of our federal criminal law. The Court of Appeals for the Second Circuit has ordered—pursuant to statutes it held binding—that defendant's prison term be increased substantially; another 30 months must now be added to the term reluctantly imposed by the district court of 30 months in a prison medical treatment center—an additional period likely to be spent in the general prison population. *See United States v. Reingold*, No. 11-2826-cr (2d Cir. Sept. 13, 2013) (order reversing in part as to sentencing and remanding); *United States v. Reingold*, No. 11-2826-cr (2d Cir. Sept. 26, 2013) (opinion of the court remanding for resentencing).  Such a long sentence is unjust.

   After release from prison, C.R. will be severely restricted as a convicted sex offender in where, and with whom, he can live, work and recreate for up to life. *See* 42 U.S.C. §§ 16911, 16915(a)(1), 16915(b); N.Y. Correct. Law § 168-h(1); Judgment of Conviction, *United States v. C.R.*, No. 09-CR-155 (E.D.N.Y. Jun. 21, 2011), ECF No. 157; *cf.* Michael Schwirtz, *In 2 Trailers, the Neighbors Nobody Wants*, N.Y. Times, Feb. 5, 2013, at A1 (discussing the lack of permissible, housing for "sex offenders").

   The effect of harsh minimum sentences in cases such as C.R.'s is, effectively, to destroy young lives unnecessarily. The ancient analog of our modern destruction of youngsters by cruel,

1

unnecessarily destructive and self-defeating, long minimum prison sentences, was physically sacrificing them to ancient gods for the supposed benefit of society. *Leviticus* 18:21 (King James ed.) warns, "[T]hou shalt not let any of thy [children] pass through the fire to Molech." *See* W. Gunther Plaut et al., *The Torah: A Modern Commentary*, 149 n.1, 883 (1981) (ancient human sacrifice of children); *Maimonedes Mishneh Torah*, 116 (Rabbi Eliyahu trans. with commentaries and notes, Moznaim Publ'g. Corp. 2001) ("[A] person who gives his descendants to Molech" is executed by stoning.). And a pillar of major religions is the banning of the sacrifice of children. *Genesis* 22:12-13; *see* Plaut et al., at 149 ("[R]eligion . . . rejects the sacrifice of a [mortal] son . . . ."). Yet we continue using the criminal law to unnecessarily crush the lives of our young.

An important duty of an Article III district judge is to prevent injustices by the government in individual cases. *See United States v. Ingram*, 2013 WL 2666281, at *14 n.9 (2d Cir. June 14, 2013) (Calabresi, J. concurring) ("[W]e judges have a right—a duty even—to express criticism of legislative judgments that require us to uphold results we think are wrong." (footnotes and citations omitted)); Charles E. Wyzanski, Jr., *A Trial Judge's Freedom and Responsibility*, 65 Harv. L. Rev. 1281, 1303 (1952) ("clearly ethical in its nature"); Jack B. Weinstein, *Every Day Is A Good Day for A Judge To Lay Down His Professional Life for Justice*, 32 Fordham Urb. L. J. 131, 155 (2004) ("The judge must decide: does this law violate the essence of my duty to . . . humanity."). Where, as here, in the opinion of a ruling appellate court, the trial court has exceeded its power, at least the matter has been brought to the government's and public's attention, so that in due course, in our caring democracy, future injustices of this kind will be avoided.

## II. Facts

The facts of the case have already been set forth in detail. *See, e.g.*, *United States v. C.R.*, 792 F. Supp. 2d 343 (E.D.N.Y. 2011). It is enough to note here that defendant pled guilty to distribution of child pornography while he was an adolescent. He accessed the material through an automatic file-sharing computer program. This widely available electronic system gave others access to his home computer. He never produced, sold or deliberately exchanged pornography.

## III. Immediate Background and Lack of Risk

While awaiting sentence, defendant successfully attended college and worked part-time; he was also undergoing effective intense psychiatric outpatient treatment to insure against any future violation of law. *See id.* at 406-17. Credible evidence and expert testimony established that there was no threat of his producing child pornography, viewing it in the future, or acting out in a physical way against any child or other person. *See id.* at 417-66. Nevertheless, the chance for a successful normal life for the defendant will be substantially reduced by the required new sentence.

## IV. Relation of Conduct and Dangers to Punishment

No one who is not perverted or deranged who has seen photographs and videos of child pornography can be anything but horrified by them and by adverse effects on the abused child. *See, e.g.*, *id.* at 343, 360-64, 378-404 (impact on victims); Emily Bazelon, *Money is No Cure*, N.Y. Times Magazine, Jan. 27, 2013, at 22 ("But can winning restitution from consumers of child pornography help victims rebuild their lives?").

There is a large span in the scale of defendants subject to anti-child pornography laws, from those most culpable who produce or arrange for this filth, to the passive adolescent who saves or automatically passes on what he observed through automatic file sharing, with no *mens*

3

*rea* as to possible harm. In imposing a sentence on individuals in the latter group—with no danger of acting out—a statutorily mandated five, ten, or fifteen year sentence plus post-prison lifetime restraints on where the defendant can live or work and with whom he can associate, is so unnecessarily destructive as to evoke the dread that the sentence itself constitutes a grave injustice—a sentence shockingly divergent from the American criteria for defensible penology. *See, e.g.*, 18 U.SC. § 3553 (a) ("The court shall impose a sentence sufficient, but not greater than necessary"; the court "shall consider (1) the nature and circumstances of the offense and the history and the characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense , to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.").

V. **Revisiting Mandatory, Inappropriately Harsh Sentencing Requirements**

There is a growing consensus among those responsible for enforcing our criminal law: It is unacceptable in this good and great country to continue unnecessarily sacrificing the lives of so many of our young through excessive mandatory prison sentences. *See, e.g.,* Letter from Honorable Robert Holmes Bell, Chair, Criminal Law Comm., Judicial Conference of the U.S., to Honorable Patrick J. Leahy, Chair, Comm. on the Judiciary, U.S. Senate 1 (Sept. 17, 2013) ("For 60 years, the Judicial Conference has consistently and vigorously opposed mandatory minimums and has supported measures for their repeal or to ameliorate their effects."). Medical and other scientists, academics, the Sentencing Commission, the Department of Justice, and individual prosecutors, judges, and others are beginning to agree on the need for more nuanced and less cruel sentences in cases such as C.R.'s.

Trial judges and others—close to their communities and people—seek answers to critical questions facing our legal system: "Is it not time for more rational and proportionate sentencing? Have not some mandatory minimum sentences crossed the verge into being unconstitutionally cruel and unusual?"

Inexcusable wasting of C.R. and many other young people in his position is unconscionable in a just society. *Cf. United States v. Diaz*, 11-CR-00821-2 (JG), 2013 WL 322243, at *1 (E.D.N.Y. Jan. 28, 2013) ("[T]he mandatory minimum sentences in drug trafficking cases distort the sentencing process and mandate unjust sentences." (citation omitted)); *United States v. Dossie*, 851 F. Supp. 2d 478, 484 (E.D.N.Y. 2012) (noting in drug cases statutory minimums are frequently used to "overly punish a defendant"); Mem. from Attorney Gen. Eric Holder to the U.S. Attorneys and Assistant Attorney Gen. for the Criminal Division, U.S. Dep't. of Justice 1 (Aug. 12, 2013) ("In some cases, mandatory minimum and recidivist enhancement statutes have resulted in unduly harsh sentences and perceived or actual disparities that do not reflect our Principles of Federal Prosecution."); United States Sentencing Comm'n, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System xxxi (Oct. 2011) ("The Commission's preliminary review of the available sentencing data suggests that the mandatory minimum penalties for certain non-contact child pornography offenses may be excessively severe and as a result are being applied inconsistently."); *Public Hearing on Child Pornography Sentencing Before the U.S. Sentencing Comm'n.*, 5-7 (Feb. 15, 2012) (written statement of Deirdre D. von Dornum, Deputy Attorney-in-Charge, Federal Public and Community Defenders of the Eastern District of New York) (collecting surveys and statements of those opposing high sentences for pornography viewing); United States District Judge Mark W. Bennett, *How Mandatory Minimums Forced Me to Send More than 1,000*

*Nonviolent Drug Offenders to Federal Prison*, The Nation, Oct. 24, 2012, http://www.thenation.com/article/170815/how-mandatory-minimums-forced-me-send-more-1000-nonviolent-drug-offenders-federal-pri ("Many people across the political spectrum have spoken out against the insanity of mandatory minimums."); Jelani Jefferson Exum, *What's Happening with Child Pornography Sentencing?*, 24 Fed. Sent'g Rep. 85, 89 (2011) ("growing consensus among district court judges and the broader legal community that federal sentences for possession of child pornography are too harsh"); Carissa Byrne Hessick, *Post-*Booker *Leniency in Child Pornography Sentencing*, 24 Fed. Sent'g Rep. 87 (2011) (noting the trend in sentencing child pornography offenders to move below guidelines); SpearIt, *Child Pornography Sentencing and Demographic Data: Reforming Through Research*, 24 Fed. Sent'g Rep. 102 (2011) (discussing recent cases in which district courts have refused to impose Guidelines sentences in child pornography cases and providing empirical data supporting contention that the Guidelines are too harsh); Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines,* 24 Fed. Sent'g Rep. 108 (2011) (proposing reforms that would reduce Guidelines for many child pornography offenders); Amy O'Leary, *So How Do We Talk About This?*, N.Y. Times, May 10, 2012, at D1 ("If it hasn't happened already, it will: at some point, even by accident, your child will click on pornography."); Milton J. Valencia, *U.S. Judges Balk at Rigid Child Porn Sentences*, Boston Globe, Feb. 12, 2012, http://articles.boston.com/2012-02-12/news/31052706_1_sentencing-guidelines-federal-judges-sentencing-commission (discussing extensive downward departures in child pornography cases); Audrey Rogers, From Peer-to-Peer Networks to Cloud Computing: How Technology is Redefining Child Pornography Laws (Feb. 16, 2012) (unpublished manuscript), *available at* http://ssrn.com/abstract=2006664. *See also United States v. D.M.*, 12-CR-170, 2013 WL 1846543 (E.D.N.Y. May 3, 2013) (accepting plea

of defendant to a non-minimum sentence possession count where evidence might have supported five or ten year statutory minimum charges, 18 U.S.C. section 2252 (a)(4)(B)); *People v. Steven Vasquez*, 951 N.Y.S 2d 833, 840 (N.Y. Sup. Sept. 18, 2012) (explaining that for a sex offender, being placed "[a]t home and under the supervision of a family member" and parole official is better than prison to protect the public. "Defendant will be provided with a stable and supportive environment as well as strong encouragement to comply with treatment and parole conditions."); Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation Prevention and Interdiction, Office of the Deputy Attorney General, U.S. Dep't. of Justice, to Honorable Patti B. Saris, Chair, U.S. Sentencing Comm'n 1 (Mar. 5, 2013) ("The Department has joined in the call for a critical review of the existing sentencing guidelines for non-production child pornography crimes."); *id*. at 7 ("[T]o the extent that prosecutorial assessments of non-production child pornography cases conclude that potentially provable charges or sentencing enhancements should not be pursued, those determinations are based on individualized assessments of the particular circumstances, and they likely flow from a recognition by prosecutors that application of the non-production sentencing guideline may result in a sentence that is at times too high, and at other times too low, in light of the evolution in how offenders obtain, store, organize, trade, and protect child pornography collections."); U.S. Sentencing Comm'n, Report to the Congress: Federal Child Pornography Offenses xiii (Dec. 2012) ("*Increasing numbers of courts and parties in non-production cases have engaged in charging and sentencing practices that have had the effect of limiting the sentencing exposure for many offenders as a result of the view that the current non-production sentencing scheme is outmoded, fails to distinguish adequately among offenders based on their levels of culpability and dangerousness, and is overly severe in some cases.*"(emphasis in original)); *id*. at xxi ("[T]here is a growing belief among many interested

parties that the existing sentencing scheme in non-production cases no longer distinguishes adequately among offenders based on their degrees of culpability and dangerousness. Numerous stakeholders—including the Department of Justice, the federal defender community, and the Criminal Law Committee of the Judicial Conference of the United States Courts—have urged the Commission and Congress to revise the non-production sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders' varying degrees of culpability and dangerousness."). *But see* Letter from Jonathan J. Wroblewiski, Director, Office of Policy and Legislation, Office of the Assistant Attorney General, U.S. Dep't. of Justice, to Honorable Patti B. Saris, Chair, U.S. Sentencing Comm'n 12 (July 11, 2013) ("[W]e do not support the elimination or dramatic reduction of any existing mandatory minimum penalties."); Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation Prevention and Interdiction, Office of the Deputy Attorney General, U.S. Dep't. of Justice, to Honorable Patti B. Saris, Chair, U.S. Sentencing Comm'n, *supra*, at 6 ("[T]he Department opposes the elimination of, or significant reduction in, mandatory minimum sentences in the event that the receipt and possession offenses are merged.").

**VI.     Evolving Views of the Supreme Court on Cruel and Unusual Sentences of Youth**

The Supreme Court appreciates the unconstitutional cruelty involved in unnecessarily severe sentences of adolescents. *See, e.g., Miller v. Alabama*, 132 S. Ct. 2455 (2012) (finding unconstitutional a sentencing scheme mandating life in prison without possibility of parole for juvenile homicide offenders); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Constitution prohibits a sentence of life in prison without parole for juvenile offenders who committed a non-homicide offense); *Roper v. Simmons*, 543 U.S. 551 (2005) (finding that a defendant who committed an offense when under the age of 18 cannot be executed for that offense); *cf. J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2403 (2011) ("The law has historically

reflected the . . . assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." (citing 1 W. Blackstone, Commentaries on the Law of England 464-65)).

Needlessly destructive sentencing should not be countenanced in a sound system of law. Statutes should not embrace such punishments even if the Constitution does not prohibit them.

## VII. Production of Defendant Pursuant to Mandate for Sentencing

The defendant shall be promptly produced to be resentenced.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: September 26, 2013
Brooklyn, New York